**TYLER CAR & TRUCK CENTER, Appellant,**

v.

**EMPIRE FIRE & MARINE INSURANCE COMPANY and Empire Indemnity Insurance Company, Appellees.**

**No. 12–98–00234–CV.**

Court of Appeals of Texas, Tyler.

July 30, 1999.

Rehearing Overruled Sept. 15, 1999.

M. Keith Dollahite, Tyler, for appellant.

Rex W. Dwyer, Benton J. Barton, Dallas, for appellee.

Panel consisted of RAMEY, Jr., C.J., HADDEN, J., and WORTHEN, J.

HADDEN, Justice.

Appellant Tyler Car and Truck Center ("the dealer") sued Appellees, Empire Fire and Marine Insurance Company and Empire Indemnity Insurance Company ("the insurance company"), to recover for damages to an automobile under the physical damage coverage of its insurance policy. The trial court found that the vehicle was not a "covered auto" under the policy and rendered judgment for the insurance company. The dealer brings four issues on appeal. We will affirm.

This case was submitted to the trial court without a jury on stipulated facts, undisputed exhibits, and deposition excerpts. On Saturday, August 3, 1996, nineteen-year-old Walter ' Wheeler ("Wheeler") purchased a 1991 Dodge Stealth automobile from the dealer. The dealer's authorized representative, Randall Brown ("Brown"), prepared the paperwork which included an invoice, a retail installment sales contract, a "no warranty" agreement, and an application for a Texas certificate of title. The documents were signed by Brown and Wheeler. Wheeler gave Brown a $1,200 check for the agreed down payment. However, Wheeler had no automobile insurance which would cover his new purchase, and he was unable to obtain it that day because it was Saturday. Wheeler promised Brown that he would obtain insurance coverage the first thing Monday morning and signed an agreement to that effect. Brown then gave Wheeler the keys to the vehicle, and Wheeler drove it away. The parties stipulated that there was no fraud by Wheeler in obtaining possession of the automobile.

On the following day Wheeler wrecked the vehicle and rendered it a total loss.[1] At the time Wheeler had not obtained insurance. However, the dealer carried auto dealer's insurance with the insurance company which covered physical damage to his vehicle and the original Texas certificate of title still showed the dealer as the last transferee. The dealer made an $8,995.00 claim for the loss, but the insurance company denied the claim on the grounds that the vehicle was not a covered vehicle under the policy. The dealer sued the insurance company which, in its defense, asserted that the dealer had sold the

---

1. The sales contract named the dealer as seller and creditor, and although the dealer typically assigned the contract to a lender, the financing had not been approved and the assignment had not been made at the time of the loss. Wheeler apparently rescinded the contract because Wheeler informed the dealer of the accident who reclaimed possession of the wrecked auto.

vehicle on August 3, 1996, had relinquished control and possession of it, was not the owner at the time of the loss, and thus, the loss was not covered. The trial court agreed with the insurance company and rendered judgment that dealer take nothing by its suit.

■ In its first and third issues, the dealer asserts that the court erred in finding that the vehicle in question was not a covered vehicle under the dealer's insurance policy at the time of the accident, and, therefore, the insurance company did not have to pay the damages. It contends that, even though it did not have full ownership and exclusive possession of the automobile at the time of the accident, the transaction was not completed because it had not transferred the certificate of title to Wheeler and Wheeler did not provide proof of insurance or fully pay the purchase price. Consequently, it argues that it had an insurable ownership or security interest in the vehicle which satisfied the requirements of the policy.

In response, the insurance company contends that the name on the title certificate only raised a presumption of ownership which was easily rebuttable. It argues that the evidence is undisputed that there was a transfer of ownership from the dealer to Wheeler. Documents evidencing the transaction had been prepared and executed, the dealer gave Wheeler the keys, and Wheeler possessed and controlled the automobile when he drove it from the dealer's lot. Wheeler testified that when he drove the automobile off of the dealer's lot, he considered himself the owner and the only person who had the right to possess and control it. No one at the dealership had placed any limitation on his use and control of the vehicle. The insurance company claims that it has long been the rule in Texas that regardless of the certificate of title status, a seller's insurance policy does not continue to cover an auto once a buyer assumes control over it. We agree.

■ The insurance policy described covered vehicles as "only those autos you own." The question then is what factors determine ownership of the vehicle and thus coverage under the insurance policy. The right to possession and the power to control the use of the auto determines the auto's ownership for insurance coverage purposes. *Gulf Ins. Co. v. Bobo*, 595 S.W.2d 847, 848 (Tex.1980); *Black v. BLC Ins. Co.*, 725 S.W.2d 286, 288 (Tex.App.— Houston [1st Dist.] 1986, writ ref'd n.r.e.). The facts in *Gulf Insurance Co.* are strikingly similar to the facts in the instant case. There, the seller agreed to sell his pickup truck to the buyer, subject to proof of insurance and completion of the paperwork. The buyer took possession of the truck and, one day before the meeting to complete all conditions of sale, the buyer wrecked the truck. The buyer, as plaintiff, asserted that the seller's insurance policy continued to provide coverage for the truck because the sale was conditional and the seller "retained an interest" in it. However, the supreme court disagreed stating:

> A conditional vendee does not use the insured vehicle with the consent of the vendor and is not covered as an additional insured ... because after an agreement is reached and delivery is made, the buyer, and not the seller, has control over the vehicle. [citation omitted]. The seller might retain legal title as a security interest, but between the buyer and seller, the seller has no right to possess or control the vehicle.

*Gulf Ins. Co.*, 595 S.W.2d at 848. The facts in *Black* are also similar. There, BLC Insurance Company issued an automobile insurance policy to Webster covering his 1972 Dodge automobile. Webster then sold the vehicle to Linville, who sold it to Sanchez a week later. Sanchez took possession, paid $270.00 down, and promised to pay the balance later. Linville gave Sanchez a Bill of Sale to evidence the transaction. About three weeks later, Sanchez, while driving the 1972 Dodge, was in a collision with Black, who was

injured. In that case, Black contended that BLC Insurance Company had a duty to defend and indemnify Sanchez under Webster's policy. Following *Gulf Insurance Co.*, the Houston court held that Webster's ownership of the Dodge was a prerequisite to coverage under the policy, and described policy considerations for this rule:

> A finding of coverage under these facts would deprive an insurance company of the right to choose its customers and delegate that power to the insured when choosing a buyer. It would expose the insured to a greater risk than it assumed by covering permissive use. This is because the insured would generally loan his car cautiously in order to get it back whole. The insured will not be so careful, however, when selling.

*Black*, 725 S.W.2d at 288. The dealer urges us to apply a strict and technical reading of the Certificate of Title Act. Section 501.071 of the Act states:

(a) A motor vehicle may not be the subject of a subsequent sale unless the owner designated in the certificate of title transfers the certificate of title at the time of the sale.

(b) The transfer of the certificate of title must be on a form prescribed by the department that includes a statement that;

(1) the signer is the owner of the vehicle; and

(2) there are no liens on the vehicle except as shown on the certificate of title or as fully described in the statement.

TEX. TRANSP. CODE ANN. § 501.071 (Vernon 1997). A sale made in violation of this chapter is void and title may not pass until the requirements of this chapter are satisfied. TEX. TRANSP. CODE ANN. § 501.073 (Vernon 1997). The name on the certificate of title, however, is not conclusive of ownership. *Minter v. Joplin*, 535 S.W.2d 737, 738 (Tex.Civ.App.—Amarillo 1976, no writ). Evidence of the name in which an automobile is registered raises only "an administrative presumption" of ownership which is not evidence of ownership and "which vanishes when positive evidence to the contrary is introduced." *Id.* at 739. The Certificate of Title Act was designed to "lessen and prevent theft of motor vehicles, traffic in stolen vehicles, and sale of encumbered vehicles without disclosure of existing liens." *Najarian v. David Taylor Cadillac*, 705 S.W.2d 809, 811 (Tex.App.—Houston [1st Dist.] 1986, no writ). The Act was not designed to prevent sales and transfers of automobiles as between a buyer and a seller. *Black*, 725 S.W.2d at 288. Thus, the sale of an automobile which may not be in exact compliance with the Act may still be valid as between the buyer and seller. *U.S. v. 1977 Porsche Carrera*, 946 F.2d 30, 34 (5th Cir.1991); *Phil Phillips Ford, Inc. v. St. Paul Fire & Marine Ins. Co.*, 465 S.W.2d 933, 937 (Tex.1971); *Jarrin v. Sam White Oldsmobile Co.*, 929 S.W.2d 21, 24 (Tex.App.—Houston [1st Dist.] 1996, writ denied); *Cash v. Lebowitz*, 734 S.W.2d 396, 398 (Tex.App.—Dallas 1987, writ ref'd n.r.e.).

The dealer has cited several cases which have strictly applied the Certificate of Title Act and invalidated an automobile sale. However, this line of cases makes a strict application of the Act when the rights of third parties are involved who are usually innocent purchasers of stolen or encumbered vehicles. For instance, in *Allstate Insurance Co. v. Dykes*, the buyer agreed to purchase the seller's vehicle and obtained possession of it with a stolen down payment. *Allstate Insurance Co. v. Dykes* 461 S.W.2d 519 (Tex.Civ.App.—Tyler 1971, writ ref'd n.r.e.). The buyer fled with the vehicle. There, the seller sought coverage under the theft provision of his insurance policy. Because the transaction involved criminal intent and fraud, this Court upheld the seller's recovery. *Id.* at 522. The remaining cases cited by the dealer are also distinguishable because they involve crime, fraud, or the rights of third parties where strict application of the Certificate of Title Act yielded the only equitable re-

sult. *See, e.g., State v. Southwind Auto Sales*, 951 S.W.2d 849 (Tex.App.—San Antonio 1997, no writ); *Gallas v. Car Biz, Inc.*, 914 S.W.2d 592 (Tex.App.—Dallas 1995, writ denied).

In support of its retention of insurable interest argument, the dealer also cites *State Farm Mutual Auto. Ins. Co. v. Kelly*, 945 S.W.2d 905 (Tex.App.—Austin 1997, writ denied). However, *Kelly* is distinguishable. There, the buyer purchased a stolen automobile in good faith. The issue was whether the *buyer's* insurance policy covered the buyer's loss when the true owner claimed it. The court held that the buyer had an insurable interest and that it was therefore a covered auto under buyer's policy, even though buyer did not have legal title to it. There was no issue involved in that case as to whether *seller's* insurance policy covered the stolen automobile. Moreover, the court in *Kelly* merely followed settled Texas law that in order to discourage the use of insurance for illegitimate purposes, one must have an insurable interest in property before there can be insurance coverage. It does not follow from a reading of *Kelly* that one's security interest in property is always covered. The policy must provide such coverage. The dealer's interest in the instant case was that Wheeler still owed it $8,995.00 for the automobile but there was no provision in the policy covering a loss by the dealer in its capacity as a lender or creditor. In *Gulf Insurance Co.*, the seller retained a security interest in the automobile, yet the supreme court refused to find coverage. *Gulf Ins. Co.*, 595 S.W.2d at 848.

Finally, dealer argues that *Gulf Insurance Co.* and *Black* involve "liability insurance" and that they would not be authoritative in a case involving "property damage" coverage. The policy in the instant case, however, provides for several types of coverage including liability and physical damage. The description of the automobiles covered makes no limitation as to types of coverage of the "autos you own." Moreover, the dealer has not supported this argument by appropriate authority and we fail to see any plausible reason to make such a distinction.

In its second issue presented, the dealer complains that the court erred in holding that Wheeler was not "insured" under the policy at the time of the accident. However, the dealer has made no argument nor cited any authorities in support of this argument. Failure to cite legal authority in support of an issue constitutes waiver of that issue on appeal. *State Farm Lloyds, Inc. v. Williams*, 960 S.W.2d 781 (Tex. App.—Dallas 1997, writ dism'd by agr.). Thus, the dealer's second issue is waived.

In its fourth issue, the dealer asserts that the trial court erred in refusing to enter its requested findings of fact, conclusions of law, and judgment for his damages. The dealer's entitlement to damages is subject to a favorable holding regarding insurance coverage. We have previously addressed that issue under issues first and third and will not again address it here.

In the instant case, the evidence is overwhelming that an agreement was reached between the dealer and Wheeler, that unrestricted delivery was made to Wheeler, and that thereafter Wheeler, not the dealer, had full possession and control of the automobile. The insurance policy described covered automobiles as "only those autos you own." As discussed above, Plaintiff's "retention of interest" argument was considered and rejected by the Texas Supreme Court. *See Gulf Ins. Co.*, 595 S.W.2d at 848. We hold, therefore, that the automobile was not a covered auto under the policy. The dealer's four issues presented are overruled, and the judgment of the trial court is **_affirmed_**.